Wright, J.
This was an action against Beard, plaintiff *30 in error, as the indorser of two promissory notes, held by Westerman. Upon the day of payment, no demand was made or notice given, but the plaintiff claimed to recover, notwithstanding, on the ground that at maturity of the note the indorser had property of the maker in his hands as security, sufficient in amount for its payment.
The petition states the matter thus: The said plaintiff also avers that he was excused from making a demand upon the said W. II. Powell, or notifying the said defendant that said notes were unpaid on the 6th day of May, 1869, because he says that the said Jacob Beard then had sufficient effects in his possession, by virtue of said chattel mortgage, to fully and completely indemnify him against the payment of said promissory notes.
The answer takes issue as follows : The said defendant, for answer, says that he denies that at the time, the said 6th day of May, 1869, he had the control of said property, or any part thereof, and denies that he was in any manner indemnified, or had any security for the amount due on said two notes, or any part thereof; and. he denies that he is liable to the said plaintiff in any amount whatever thereon, and he asks to be hence dismissed, with his costs.
When an indorser is indemnified by property of the maker in his possession, at the time the note falls due, demand and notice is not necessary. Kyle v Green, 14 Ohio, 495; Develing v. Ferris, 18 Ohio, 170; 1 Parsons on Bills and Notes, 567 et seq.
The question, then, is one of fact. Was Beard, the indorser, thus indemnified ?
The notes fell due upon the 6th of May, 1869. The maker was one Powell, who owned an undivided half of certain chattel property, pertaining to a distillery. This property did come into the hands of Beard, but not, as the evidence seems to indicate, until after the notes matured.
Upon this subject the court charged that if Beard, on the 6th day of May, 1869, had not full indemnity, the fact that he afterward came into possession of property belonging to Powell not covered by the mortgage, will not alone make *31 him liable to Westerman in this action, and indemnity secured after the maturity of the notes does not dispense with the necessity of demand and notice of non-payment, if Beard is to be held upon his contract as indorser.
It is very plain, therefore, as plaintiff' in error contends, that he can not be held as indorsor, demand and notice having been omitted, and no sufficient excuse therefore existing.
But. another ground remains upon which the liability of plaintiff in error, who was defendant below, can be successfully established, in accordance with the verdict of the jury.
The notes in this case were two of three given by Powell to Beard, the plaintiff in error, and secured by a chattel mortgage upon Powell’s undivided half of the chattel property in the distillery. Two of these notes, amounting to $1,000, Beard indorsed to Westerman, defendant in error, assigning at the same time the chattel mortgage to the extent of $1,000. These are the notes upon which the present suit is brought. Beard transferred the third note of $500 to another party. This note he was subsequently obliged to take up. Having otherwise acquired the ownership of one-half the chattel property, and holding a mortgage on the other half, and in possession of it all, he put the same up at public sale. Hnable to sell an undivided half, he sold the whole for $175, himself becoming the purchaser. There was testimony tending to show the property to be worth from $3,000 to $5,000. Beard, therefore, was in this position : Having taken up his third note for $500, he held the chattel mortgage to that extent, which was-one-third, Westerman holding the other two-thirds. Being in possession of the property, he must be considered as holding it in trust, to the extent that Westerman was interested in it. If, therefore, he buys it in at a nominal sum, he does not hold it divested of this trust, and he is bound to account to Westerman accordingly. The court put it to the jury that if the property was sufficient to pay the debts it was mortgaged to secure, Beard was still liable for its value, and should be compelled to respond. This instruction was *32 correct, and the jury must have found the property worth largely more than the $175 for which Beard purchased it at his own sale. They must have found that, instead of the, whole being worth only $175, the half was worth over a $1,000, as the verdict is for the amount of the "Westerman notes and interest. What this value really was, was a question of fact, which the jury have determined, and there is no sufficient ground for a court of error to interfere with the finding. Perhaps the result might have been different had Beard purchased at a sale under legal proceedings. Had he foreclosed his chattel mortgage, and bought at the sheriff’s sale, even had he bought at a figure greatly less than the real value, it would have ended his trust, leaving Westerman without remedy. But this was not the course pursued. The sale was a public one, it is true, but not under process. It was merely a sale by Beard to himself.
Rulings of the court are complained of with regard to the rejection of evidence offered.
Much controversy was had over the question, when and how Beard obtained possession of the property covered by the chattel mortgage. One Lovell, an attorney of Westerman, was offered to prove that by agreement between himself, as such attorney, and Beard, the latter was to take possession of and sell the property.
This testimony was ruled out, and properly so. There is nothing to show that Lovell, as attorney of Westerman, was authorized to make such an agreement. lie appears to have been employed to bring suit and collect the notes, but this does not authorize him to make the contract proposed to be proved. Wilson v. Jennings, 3 Ohio St. 528; Card, v. Waldbridge, 18 Ohio, 411.
Beard, upon taking up his third note, had instituted proceedings to foreclose the chattel mortgage, making Westerman a party. The petition and answer of Westerman in that case were offered in this, and also the testimony of Westerman’s attorney, as to the communications made him by his client, upon which the answer was based. This was ruled out, and properly.
*33 It is difficult to see what purpose these pleadings could serve as evidence in the present case. They set up nothing there that is not admitted here. So far as relates to the issue before us, they simply aver the making of the notes and mortgages and the assignment to Westerman; facts which are not now denied. The ruling therefore could not have prejudiced the plaintiff in error.
Finding no error in the record, the judgment of the court below is affirmed.